UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE CO. and GEICO
CASUALTY CO.,

               Plaintiffs,               **REPORT AND RECOMMENDATION**
                                                           **19 CV 5876 (DG) (LB)**

   -against-

DIRECT RX PHARMACY INC. D/B/A
SHARONAS PHARMACY, RAFO YAGUDA,
ROBERT YALUTILOV, RICHARD JAY
APPLE, M.D., RAFAEL ANTONIO
DELACRUZ-GOMEZ, M.D., and JEAN-PIERRE
GEORGES BARAKAT, M.D.,

               Defendants.
-----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "plaintiffs" or "GEICO") initiated this action on October 17, 2019, alleging, *inter alia*, that defendants engaged in a fraudulent scheme to exploit New York's no-fault insurance system and submitted more than $548,369.00 in fraudulent pharmaceutical billing to GEICO in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962(c), and 1964(c). Complaint ("Compl."), ECF No. 1. While plaintiffs have voluntarily dismissed their case against most defendants, defendant Dr. Rafael Antonio Delacruz-Gomez, M.D. (the "Defaulting Defendant") never responded to plaintiffs' summons and complaint, and the Clerk of Court noted entry of his default on December 30, 2019. ECF No. 34. Plaintiffs now move for a default judgment against the Defaulting Defendant based on his role in the alleged fraudulent scheme. ECF No. 55. Specifically, plaintiffs seek a default judgment against the Defaulting Defendant on their third

cause of action for violation of the civil RICO statute, and on their fifth cause of action for aiding and abetting common law fraud. Id. at 1. The Honorable Diane Gujarati[1] referred plaintiffs' motion to me for a Report and Recommendation in accordance with 28 U.S.C. 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion should be granted in part and denied in part.

## BACKGROUND

The complaint arises out of New York State's no-fault insurance scheme which is designed to provide victims of motor vehicle accidents an efficient mechanism to pay for healthcare services. See generally Compl. Under New York's no-fault insurance law, N.Y. Ins. Law §§ 51505 *et seq*, automobile insurers are required to provide personal injury benefits to insureds. Compl. ¶ 28. Insured individuals may claim up to $50,000 of coverage under this law. Id. ¶ 29. An insurance policyholder may assign his or her right to no-fault benefits to a healthcare provider, who then directly bills the insurance company for any services provided. Id. ¶ 30.

### I.    Overview of Defendants' Fraudulent Scheme

Plaintiffs allege that the defendants engaged in a fraudulent scheme where doctors (the "prescribing defendants"), in exchange for kickback payments, would prescribe medically unnecessary pain-relieving products to individuals insured by GEICO who had allegedly been involved in car accidents. Compl. ¶ 53. Defendant Direct Rx, overseen by its alleged owner, defendant Yaguda, and its former supervising pharmacist, defendant Yaukitlov (collectively the "pharmacy defendants"), would fill the medically unnecessary prescriptions written by the prescribing defendants and charge GEICO inflated rates for the products under the no-fault insurance law. Id. ¶ 56. Primarily, the medically unnecessary pain-relieving products were

---

[1] This case was originally assigned to the Honorable Frederic Block but was transferred to Judge Gujarati on December 4, 2020. Docket Entry 12/04/2020.

expensive compounded pain creams and ointments. Id. ¶ 63. These compounded pain creams and ointments are not generally regulated by the FDA in the same way as most prescription and over-the-counter drugs. Id. ¶ 64. A pharmacy is allowed to compound different pain-relieving products for a patient, but only if the compounded drug is tailored to that patient's specific needs, and all other traditional methods of treatment have failed. Id. That was not what happened here. Instead, the pharmacy defendants produced the compounded pain products in bulk, solicited the prescribing defendants to prescribe those compounded products to individuals without regard for actual patient care, and then charged GEICO inflated rates for the products. Id. ¶ 159. The drugs that make up the compounded products prescribed in the fraudulent scheme alleged by plaintiffs are often available over-the-counter for a fraction of the price. Id. In addition, GEICO alleges that the defendants prescribed and supplied patients with various pain patches for which they would also bill GECIO at exorbitant prices, even though other less expensive options were available. Id. ¶¶ 147–48. GEICO's complaint alleges that the defendants defrauded plaintiffs of at least $548,369.00 through this scheme. Id. ¶ 5.

**II.   The Prescribing Defendants' Role**

Defendant Delacruz-Gomez is alleged to be one of the prescribing defendants, who prescribed the fraudulent pain-relief products to GEICO's insureds. Id. ¶ 2. The complaint alleges that the prescribing defendants created generic examination reports of patients in order to prescribe them the medically unnecessary pain-relief products. Id. ¶¶ 60–62. These prescriptions were made in order to further the defendants' scheme without any regard to the patients' actual needs. Id. ¶ 61. The prescribing defendants' indifference to patient care is shown by the fact that the prescribing defendants often used preprinted pads or labels in order to prescribe the fraudulent pain products to patients, rather than considering each patient's individual needs. Id. ¶ 70. Further, plaintiffs

allege that the record for the patients treated by the prescribing defendants in this matter did not reflect any health benefit of using the fraudulent pain product. Id. ¶ 59.

In order to further the fraudulent scheme and bill GEICO for as much as possible, the prescribing defendants would not give patients the option to fill their prescriptions at a pharmacy of their choosing and would instead send the prescriptions directly to Direct Rx. Id. ¶ 164. In fact, sometimes Direct Rx would simply mail the pain products to the patient's home, without them even knowing they were going to receive the products. Id. ¶ 162. The prescribing defendants were paid kickbacks, or given other financial incentives for their role in prescribing the fraudulent pain products and sending those prescriptions to Direct Rx. Id. ¶¶ 53, 167. New York law prohibits doctors from receiving any benefit from a third party related to services provided and specifically prohibits this kind of collusive relationship between physicians and pharmacies involving compounded prescriptions. Id. ¶¶ 154–55.

   a. **Allegations Specific to Defendant Delacruz-Gomez**

Plaintiffs' complaint alleges defendant Delacruz-Gomez prescribed a fraudulent pain product to a patient without regard to their past treatment and made no mention of the product or whether the patient's condition was improving in the patients follow up examination reports. Compl. pp. 41–43. GEICO alleges that defendant Delacruz-Gomez is personally responsible for $947,356.39 in fraudulent billing to GEICO. Id.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on October 17, 2019. ECF No. 1. Defendant Yakutilov answered the complaint on November 26, 2019 (ECF No. 20), defendants Barakat and Apple answered on December 18, 2019 (ECF Nos. 28, 29), and defendants Direct Rx and Yaguda answered on December 20, 2019 (ECF No. 31). Defendant Delacruz-Gomez was served on

November 6, 2019, and his answer was due November 27, 2019, ECF No. 22, but he failed to answer or otherwise respond to the complaint. As a result, the Clerk of Court noted entry of his default on December 30, 2019. ECF No. 34. Plaintiffs' claims against defendant Yakutilov were dismissed without prejudice by stipulation of the parties on July 6, 2020. ECF No. 43; Docket Entry 07/06/2020. Plaintiffs' claims against defendant Apple were dismissed without prejudice by stipulation on October 21, 2020. ECF No. 47; Docket Entry 10/1/2020. Plaintiffs' claims against defendants Direct Rx and Yaguda were dismissed without prejudice by stipulation on October 30, 2020. ECF No. 48; Docket Entry 10/1/2020. On February 17, 2021, plaintiffs informed the Court that they had reached a settlement in principle with defendant Barakat, who was ultimately dismissed from the action on April 2, 2021. ECF Nos. 51, 53; Docket Entry 04/02/2021. Plaintiffs now move for a default judgment against defendant Delacruz-Gomez and the motion was referred to me. ECF No. 55; Docket Entry 05/11/2021.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. After the clerk enters the default of a defendant that "has failed to plead or otherwise defend," the Court may, on a plaintiff's motion, enter a default judgment if the defendant fails to appear or move to set aside the default under Rule 55(c). Fed. R. Civ. P. 55(a), (b)(2). On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (citation omitted). However, the party in default does not admit conclusions of law. Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010). The Court therefore has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Id. (citing Au Bon

Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. Id. (citation omitted). It is not so restricted in determining damages, which the Court may calculate based on documentary evidence, affidavits, or evidence gleaned from conducting a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111. Plaintiffs allege that Dr. Delacruz-Gomez's actions violated RICO and New York law. These claims are addressed below.

## I. Liability

### a. RICO Claims

In order to "establish a RICO claim, plaintiffs must show: '(1) a violation of the statute 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008) (quoting DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001)). To show a clear violation of 18 U.S.C. § 1962, plaintiffs must show conduct of an enterprise through a pattern of racketeering activity. DeFalco, 244 F.2d at 306 (citing Sedina, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 495 (1985)). In addition, "plaintiff must allege that the injury to business or property occurred by reason of a violation of the criminal RICO statute. RxUSA Wholesale, Inc. v. Alcon Labs., Inc., 661 F. Supp. 2d 218, 244 (E.D.N.Y. 2009), aff'd sub nom. RxUSA Wholesale Inc. v. Alcon Labs., 391 F. App'x 59 (2d Cir. 2010).

### i. Individual RICO Defendant and RICO Enterprise

"RICO, by its terms, applies to the acts of 'any person employed by or associated with any enterprise engaged in' acts prohibited by the statute. Allstate Ins. Co. v. Afanasyev, No. 12 CV 2423 (JBW)(CLP), 2016 WL 1156769, at *7 (E.D.N.Y. Feb. 11, 2016), report and

recommendation adopted by 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016) (quoting 18 U.S.C. § 1962(c)). A RICO person is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1962(c). A RICO enterprise is "an individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Second Circuit requires a clear distinction between RICO persons and the RICO enterprise. Afanasyev, 2016 WL 1156769, at *8. (citing Riverwoods Chappaqua Corp. v. Marine Midland Bank. N.A., 30 F.3d 339, 344 (2d Cir. 1994)). To satisfy this distinction, plaintiffs need only show a "formal legal distinction" between the individual defendants and the RICO enterprise. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 165 (2001).

  Here, plaintiffs have adequately alleged that the Defaulting Defendant is a RICO person associated with a distinct RICO enterprise. Plaintiffs' complaint alleges that defendant Direct Rx is an enterprise that engages in interstate commerce. Compl. ¶ 201. The conduct of Direct Rx's affairs consisted of repeated violations of the federal mail fraud statute by dispensing fraudulent pain medication to patients and submitting fraudulent insurance claims to GEICO through the mail. Id. ¶ 202 Plaintiffs allege that the Defaulting Defendant participated in this fraud by using the preprinted labels and stamps provided to him by the pharmacy defendants to prescribe the medically unnecessary pain medications to patients, in exchange for kickbacks or other compensation. Id. ¶¶ 70–84. Plaintiffs' allegations thus sufficiently allege that Direct Rx was an enterprise engaged in racketeering activity, and the Defaulting Defendant was involved in that fraudulent scheme. "Since these allegations must be accepted as true in the context of a default judgment, courts have held that this degree of specificity in pleading is sufficient to satisfy the distinctiveness requirement under RICO, when alleged in the context of a no-fault billing insurance

case." Afanasyev, 2016 WL 1156769, at *8. Accordingly, plaintiffs have properly pled that Direct Rx was a RICO enterprise and the Defaulting Defendant was involved in that enterprise.

### ii. Participation in a Pattern of Racketeering Activity

Racketeering activity is defined by 18 U.S.C. § 1981(1) and refers to specific criminal acts, including mail fraud. Federal mail fraud includes the "use of the mails in the execution of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" Allstate Ins. Co. v. Howell, No. 09 CV 4660 (RJD)(VVP), 2013 WL 5447152, at *5 (E.D.N.Y. Sept. 30, 2013) (adopting Report and Recommendation) (quoting 18 U.S.C. § 1341(a)). Plaintiffs allege that defendants engaged in mail fraud by knowingly carrying out a scheme to defraud GEICO by submitting fraudulent charges through the mail. Compl. ¶¶ 210–11. A pattern of racketeering activity "requires at least two acts of racketeering activity" occurring within 10 years of one another. 18 U.S.C. 1961(5). The acts must be "related and [either] amount to or pose a threat of continuing criminal activity." Spool, 520 F.3d at 183 (citations omitted).

Here, GEICO has shown a pattern of racketeering activity because the complaint clearly alleges that the pharmacy defendants submitted hundreds of fraudulent claims through the mail over a period of five years. Compl. ¶¶ 210–11; see Afanasyev, 2016 WL 1156769 *9 (finding a pattern of mail fraud where defendants submitted many fraudulent insurance claims through the mail over a six-year period).

Finally, at the pleading stage, the participation element is a "relatively low hurdle for plaintiffs to clear[.]" Allstate Ins. Co. v. Nazarov, No. 11 CV 6187 (PKC)(VMS), 2015 WL 5774459, at *13 (E.D.N.Y. Sept. 30, 2015) (adopting report and recommendation) (internal quotations and citations omitted). "To show a defendant's 'participation' in the racketeering

8

activity, a plaintiff need only demonstrate that defendant played *some* part in the operation of the enterprise, even if not the predominant one." Afanasyev, 2016 WL 1156769, at *8 (quoting Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) (emphasis in original)). "The word 'participate' makes clear that RICO liability is not limited to those with primary responsibility [for the enterprise's affairs], just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise[.]" Reves, 507 U.S. at 179 (internal citation and quotation marks omitted).

Plaintiffs allege that the Defaulting Defendant participated in and was essential to the racketeering scheme. Memo. at 15. The pharmacy defendants needed Delacruz-Gomez and the other prescribing defendants to write the fraudulent prescriptions in order to dispense the pain products and submit the claims to GEICO. Id. Plaintiffs have alleged specific facts which show that the Defaulting Defendant had knowledge of the fraudulent scheme and participated in it by using the stamps and labels provided to him to prescribe the medically unnecessary products to patients, in exchange for illegal kickbacks. Compl. ¶¶ 70–84. Thus, plaintiffs have successfully alleged that the Defaulting Defendant participated in the racketeering scheme.

Accordingly, plaintiffs have properly pled a RICO claim against the Defaulting Defendant. See United States v. Zemlyansky, 908 F.3d 1, 11 (2d Cir. 2018) (holding that RICO conspiracy could be established by evidence showing that a defendant "knowingly agreed to facilitate 'the general criminal objective of a jointly undertaken [racketeering] scheme'") (citation omitted).

### b. Aiding and Abetting Common Law Fraud[2]

The elements of aiding and abetting fraud under New York Law are: "(1) an underlying fraud; (2) the defendant's actual knowledge of the fraud; and (3) the defendant's substantial

---

[2] Plaintiffs have invoked the Court's diversity jurisdiction, Compl. ¶ 25, in addition to alleging a federal RICO claim.

assistance to the fraud." Silvercreek Mgmt. v. Citigroup, Inc., 346 F. Supp. 3d 473, 482 (S.D.N.Y. 2018) (citing Krys v. Pigott, 749 F.3d 117, 127 (2d Cir. 2014); Oster v. Kirschner, 77 A.D. 3d 51 (1st Dep't 2010).

First, plaintiffs have sufficiently alleged the underlying fraud as discussed above. See Afanasyev, No. 12 CV 2423 (JBW)(CLP), 2016 WL 1156769, at *10–11 (finding liability for common law fraud from similar factual allegations regarding a scheme to defraud under the no-fault insurance law). Next, plaintiffs successfully allege that the Defaulting Defendant had actual knowledge of the underlying fraud and that he provided it assistance. Knowledge can be shown through circumstantial evidence. Silvercreek, 346 F. Supp at 487. As evidence of defendant Delacruz-Gomez' knowledge, plaintiffs point to his frequent use of the stamps and labels provided to him by the pharmacy defendants to prescribe products produced by Direct Rx which he knew were not medically necessary. Compl. ¶¶ 70–77. Plaintiffs further allege that defendant Delacruz-Gomez was only prescribing these products to maximize defendants' profits on the fraudulent scheme. Compl. ¶¶ 75–81. Thus, plaintiffs sufficiently allege that defendant Delacruz-Gomez had actual knowledge of the fraud and substantially assisted defendants' fraud.

Thus, plaintiffs have demonstrated defendant Delacruz-Gomez' liability for aiding and abetting common-law fraud.

## II. Damages

Plaintiffs' complaint seeks compensatory and treble damages for their third cause of action (RICO) and compensatory damages and prejudgment interest for their fifth cause of action (aiding and abetting common law fraud), Compl. ¶¶ 207–213, 221–228. However, the instant motion seeks only compensatory and treble damages for the RICO claim, and interest on the damages owed under the fifth cause of action, but not fraud damages. See Memo. 25–26. This is undoubtedly

10

because plaintiffs are aware that they cannot receive both treble damages under RICO and compensatory damages for common law fraud related to the same fraudulent conduct. See Gov't Emples. Ins. Co. v. Esses, 12 CV 4424 (RJD)(VVP), 2013 WL 5972481, at *10, n.3 (E.D.N.Y. Nov. 5, 2013) (adopting Report & Recommendation) (finding that treble damages under RICO wholly compensates plaintiffs, and fraud damages for same conduct would be duplicative). Thus, plaintiffs should recover treble damages for their RICO claims, but should not recover compensatory damages nor interest for their common law fraud claim.

It is well established that when a party is in default, it is "deemed to constitute a concession of all well plead[] allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted); see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint, with respect to the amount of the damages are not deemed true."); Peralta v. M & O Iron Works, Inc., No. 12 CV 3179 (ARR)(RLM), 2014 WL 988835, at * 6 (E.D.N.Y. Mar. 12, 2014) (adopting Report and Recommendation) ("Although the Court must accept as true the well-pleaded allegations contained within plaintiff's amended complaint as to defendant's liability, it need not give the same deference to plaintiff's allegations regarding damages.") (citation omitted). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). However, "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Jean-Louis, No. 06 CV 5924 (ARR), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d

Cir. 1991)). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court within a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

In support of their motion for a default judgment, plaintiffs submit a declaration from Kathly Asmus, a Claims Manager for GEICO which states that plaintiffs' requested damages were ascertained from a tax identification run ("TIN run") which identified each of the payments GEICO made to Direct Rx in relation to the fraudulent scheme. Declaration of Kathy Asmus ("Asmus Decl.") ¶¶ 4–6, ECF No. 55-3. Plaintiffs also submit the TIN run itself.[3] Id. Ex. 1. Courts have found that such documentary evidence is sufficient to support a damages award in similar cases, thus no hearing is necessary in this case. Nazarov, 2015 WL 5774459 at *17 (collecting cases). Because the Asmus declaration and TIN run sufficiently support the award of damages sought by the complaint, I find that plaintiffs should be awarded $548,369.00 in RICO damages.

    a. **RICO Damages**

Plaintiffs assert that the Defaulting Defendant is liable to them for the full amount of damages on their RICO claim as "[d]efendants in a RICO conspiracy are 'jointly and severally liable for all of [a] plaintiff's damages, even those with which an individual was not personally involved.'" Gov't Emples. Ins. Co. v. Alrof, Inc., 11 CV 4028 (SLT)(RER), 2013 WL 960068 at *13 (E.D.N.Y. July 19, 2013). As the plaintiffs' submissions demonstrate that they are entitled to

---

[3] The Court notes that the amount of damages sought in plaintiffs' memo and reported in the TIN run is greater than that alleged in plaintiffs' complaint. See Compl. ¶ 6; Asmus Decl. ¶ 6. Specifically, the complaint seeks $548,369.00 and plaintiffs' memo seeks $599,283.27. Id. This is because the TIN run encompasses a greater amount of time during which the defendants' scheme was allegedly in operation. The complaint attaches evidence of bills fraudulently submitted from the period of 2014–2019, but the TIN run covers the period from 2013–2020. See Compl. Ex. 1, ECF No. 1-3; Asmus Decl. Ex. 1, ECF No. 55-3. The Court finds that the TIN run adequately supports the allegations in the complaint. The Court should only award damages for the time period alleged by the complaint.

recover $548,369.00 that they paid to Direct Rx as a result of the fraudulent scheme, defendant Delacruz-Gomez is liable for that entire amount.[4]

Plaintiffs also seek treble damages as allowed by statute. See 18 U.S.C. § 1964(c) ("Any person injured . . . [by violation of Civil RICO] . . . shall recover threefold the damages he sustains."). "Courts have found that an award of treble damages is appropriate in No-Fault billing cases involving RICO fraud claims, even in the context of default." Afanasyev, 2016 WL 1156769, at *12 (collecting cases). Here, plaintiffs have established defendant Delacruz-Gomez' liability under RICO; therefore, the Court should award plaintiffs treble damages in the amount of $1,645,107.00.

### b. Fraud Damages and Prejudgment Interest

Plaintiffs may not recover damages under their common law fraud claim in addition to the RICO damages. See Esses, 2013 WL 5972481, at *10 ("Since the award of damages under RICO wholly compensates the plaintiffs and the award having been trebled, the plaintiffs are not entitled to separate awards of damages on the claims for common law fraud."); Allstate Insurance Co. v. Williams, 13 CV 2893 (RJD)(JMA), 2014 WL 6900121 at *10 (E.D.N.Y. Dec. 5, 2014) (awarding damages sought under RICO and state law for the same fraud would be duplicative).

As plaintiffs should not receive compensatory damages on their fraud claim, they are not entitled to interest on those damages. Furthermore, it would be inappropriate for the Court to award prejudgment interest to a plaintiff who receives treble damages under RICO. Allstate Ins. Co. v. Kumar, 10 Civ. 8166 (KBF)(RLE), 2013 WL 2395748, at *4 (S.D.N.Y. June 3, 2013) (declining

---

[4] While generally a non-settling defendant is entitled to a credit for the settlement of his co-defendants, such a credit is not available in the context of a default. See State Farm Mut. Auto. Ins. Co. v. Grafman, 968 F. Supp. 2d 480, 482 (E.D.N.Y. 2013) (finding that because the duty falls on the non-settling defendant to show that a full recovery against him would overcompensate plaintiff, a "defaulting party eschews the opportunity to carry this burden" and does not deserve the benefit of a set-off) (citations omitted).

to award prejudgment interest on damages where "trebled [sic] damages [under RICO] have sufficiently compensated the plaintiff and where there are no extraordinary circumstances that would otherwise warrant compelling defendants to pay interest") (citing Bingham v. Zolt, 810 F. Supp. 100, 102–03 (S.D.N.Y. 1993)).

## CONCLUSION

Accordingly, I respectfully recommend that plaintiffs' motion for a default judgment against Rafael Antonio Delacruz-Gomez should be granted in part and denied in part. Plaintiffs should be granted a default judgment in the amount of $1,645,107.00 against defendant Delacruz-Gomez on plaintiffs' RICO claim. Plaintiffs' motion for damages and interest on their common law fraud claim should be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 152 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: December 16, 2021
      Brooklyn, New York